IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| THOMAS BARTKO, | § |  |
|---|---|---|
|  | § |  |
| *Plaintiff*, | § |  |
|  | § |  |
| *versus* | § | CIVIL ACTION NO. 1:13-373 |
|  | § |  |
| CAROLYN W. COLVIN, | § |  |
| Acting Commissioner of | § |  |
| Social Security, | § |  |
|  | § |  |
| *Defendant*. | § |  |

## REPORT AND RECOMMENDATION

Thomas Bartko ("Bartko") seeks review of an adverse decision on his application for disability insurance benefits under the Social Security Act.

### I. Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Reviewing courts also must take "due account" of "the rule of prejudicial error." 5 U.S.C. § 706; *see also* 28 U.S.C. § 2111 (directing that judgments given upon examination of records be "without regard to errors or defects which do not affect the substantial rights of the parties"); *see also* FED. R. CIV. P. 61 (stating that "the court must disregard all errors and defects that do not affect any party's substantial rights").

## II. Background

In 2001, while working as a garage maintenance worker, Bartko sustained a low-back injury while operating a power-washer at work. (T. 250). Nine years later, on November 22, 2010, Bartko protectively filed an application for disability insurance benefits, alleging that he became unable to work due to back pain as of September 25, 2001.[1] (T.51-52, 55-66, 101-07). His claim eventually was assigned to administrative law judge, Dale Black-Pennington ("ALJ Black-Pennington"), who conducted an evidentiary hearing. (T. 32-50).

ALJ Black-Pennington denied Bartko's application in a written decision dated February 22, 2012. (T. 18-27). The Appeals Council denied Bartko's request for review (T. 1-6). Bartko then instituted this proceeding.

## III. Commissioner's Decision

ALJ Black-Pennington concluded that there was "no doubt" that Bartko was disabled due to degenerative disc disease of the lumbar spine as of the dates of the evidentiary hearing and written decision. (T. 26). But, *as of the date Bartko was last insured* – December 31, 2006 – Bartko still had residual functional capacity for a full range of sedentary work. (T.23). It precluded performance of Bartko's past relevant work as maintenance worker (T. 26), but

---

[1] When used in conjunction with an application for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date. *Wichelns v. Commissioner of Soc. Sec.*, No. 5:12-CV-1595 (NAM/ATB), 2014 WL 1311564, at *3 n.1 (N.D.N.Y. Mar. 31, 2014).

permitted him to perform alternative, available work.[2]  (T. 26-27).  Therefore, Bartko's application was denied.  (T. 27).

### IV.  Points of Alleged Error

Bartko argues that ALJ Black-Pennington erred as follows:

> The Administrative Law Judge failed to comply with 20 C.F.R. 404.1527 by failing to accord adequate weight to the opinion of the claimant's treating orthopedic specialist, Stewart Kaufman, M.D.

(Dkt. No. 10, p. 1).  Dr. Kaufman opined that Bartko was "totally disabled" from 1/23/03 thru 8/11/06.  Bartko argues that this description necessarily indicates that Bartko was unable to perform *any* type of work.  (*Id.*, p. 3).  Bartko contends that Dr. Kaufman's opinion was well-supported by medically accepted clinical and diagnostic findings, and was consistent with other substantial evidence of record.  (*Id.*, pp. 4-5).  Bartko contends that ALJ Balck-Pennington erred by failing to afford Dr. Kaufman's opinion controlling weight or provide any reason for her "obvious rejection" thereof.  (*Id.*, p. 6).

The Commissioner responds that Dr. Kaufman's "totally disabled" notations were not medical opinions, but rather statements that ALJ Black-Pennington was not required to accept on an issue reserved exclusively to the Commissioner.  (Dkt. No. 11, p. 5).  The Commissioner argues that Dr. Kaufman's opinion on disability was given in the context of state workers' compensation proceedings, which apply a different definition of disability.  (*Id.*, p. 6).

---

[2] ALJ Black-Pennington based this finding on Rule 201.18 of Medical-Vocational Guidelines commonly referred to as "the grids."  These guidelines are a matrix of general findings established by rule as to whether work exists in the national economy that a person can perform. When properly applied, they ultimately yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996).

The Commissioner further contends that ALJ Black-Pennington did not ignore evidence from Dr. Kaufman because Dr. Kaufman's treatment notes are mentioned expressly in ALJ Black-Pennington's residual functional capacity determination. (Dkt. No. 11., p. 7). The Commissioner acknowledges that ALJ Black-Pennington did not mention or expressly weigh Dr. Kaufman's total-disability opinion, but argues that administrative law judges are not required to state every reason justifying their decisions. (*Id*.).

Finally, the Commissioner argues that Bartko's condition worsened to its present state *after* his last-insured date, and such fact cannot support a finding of disability *prior to* his date last insured. (Dkt. No. 11, p. 14). The Commissioner points out, however, that *even after Bartko's condition worsened*, Dr. Kaufman opined as late as 2008 that Bartko could still do *sedentary* work. (*Id*.).

In short, the Commissioner contends that ALJ Black-Pennington properly assessed the evidence of record, including evidence from Dr. Kaufman and other physicians, and that substantial evidence supports her decision. (Dkt. No. 11, pp. 5-14).

## V. Residual Functional Capacity

The pivotal finding that ultimately led to a denial of Bartko's claim was ALJ Black-Pennington's determination that Bartko retained "residual functional capacity" for a full range of sedentary work through his last insured date. This administrative term refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. See 20 C.F.R. § 404.1545(a)(1); *see also* SSR 96–8p, TITLES II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL

CLAIMS, 1996 WL 374184, at *2 (SSA July 2, 1996).³ Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. Descriptions and observations of limitations from all sources, medical, claimants and lay persons are admissible and relevant on this issue.⁴

## VI. Treating Source Medical Opinion

Administrative law judges rely heavily on medical sources when assessing claimants' residual functional capacity. The Commissioner provides explicit guidance to administrative adjudicators for weighing medical opinions regarding severity of symptoms and impairment-caused limitations. Both the Commissioner and reviewing courts provide standards for articulating reasons that justify adjudicators' assessments of medical source opinions.

*A.  Treating Physician Rule*

Administrative law judges must give controlling weight to opinions of treating sources regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(c) (2); *see also* SSR 96–2p, TITLES II AND XVI: GIVING CONTROLLING WEIGHT TO TREATING SOURCE MEDICAL

---

³ A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching), may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(b); *see also SSR* 96-8p, 1996 WL 374184, at *5.

⁴ *See* 20 C.F.R. § 404.1545(a)(3).

OPINIONS, 1996 WL 374188, at *1-2 (SSA July 2, 1996) (explaining controlling-weight factors).

When *controlling* weight is not afforded, an administrative judge must consider certain regulatory factors to determine *how much weight*, if any, to give such opinions: (1) length of treatment relationship and the frequency of examination; (2) nature and extent of treatment relationship; (3) evidence that supports a treating physician's report; (4) how consistent a treating physician's opinion is with the record as a whole; (5) specialization of a physician in contrast to condition being treated; and (6) any other significant factors. 20 C.F.R. § 404.1527(c)(1)-(6); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

B.  *"Good Reasons" Rule*

A corollary to the treating physician rule is the so-called "good reasons rule," which provides that the Social Security Administration "will always give good reasons in [its] notice of determination or decision for the weight [it] give[s] [claimant's] treating source's opinion." 20 C.F.R. 404.1527(c)(2); *see also* SSR 96–2p, 1996 WL 374188, at *5. Courts embrace this requirement. *See Clark v. Commissioner of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). And "[t]hose good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific ....'" *Blakely v. Commissioner of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting SSR 96–2p, 1996 WL 374188, at *5 (S.S.A. July 2, 1996)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of*

*substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record.'" *Blakely*, 581 F.3d at 407 (quoting *Rogers*, 486 F.3d at 243; emphasis in *Blakely*).

C.  *Ultimate Issue Rule*

The opinion of a treating physician, or any doctor, that a claimant is "disabled" or "unable to work" is not controlling. 20 C.F.R. § 404.1527(d)(1). It is the Commissioner who is "responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability." *Id.*; *see also* SSR 96–5p, TITLES II AND XVI: MEDICAL SOURCE OPINIONS ON ISSUES RESERVED TO THE COMMISSIONER, 1996 WL 374183, at *1 (S.S.A. July 2, 1996) (explaining that determinations of disability are reserved for the Commissioner and to the extent a treating source comments on that issue, such commentary is "never entitled to controlling weight or special significance."). "Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation ... to explain why a treating physician's opinions are not being credited." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).[5]

## VII.  **Disability Determinations By Other Agencies**

Determining whether a person is disabled for workers' compensation purposes involves answering different questions than those involved in social

---

[5] An administrative law judge, however, is not required to explicitly discuss each factor, as long as her "reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 Fed. App'x 67, 70 (2d Cir. 2013) (summary order)("Atwater challenges the ALJ's failure to review explicitly each factor provided in 20 C.F.R. § 404.1527(c). We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.") (citation omitted)).

security disability cases. *Roller v. Colvin*, No. 5:12–cv–01680 (TJM), 2014 WL 1280849, at *17 (N.D.N.Y. Mar. 27, 2014) (citing *New York Workers' Compensation Law § 10, et seq.*, and 20 C.F.R. § 404.1504). Thus, evidence of a claimant's disability for workers' compensation purposes is not directly relevant to the standard of disability set forth by the Social Security Act. *Flanigan v. Colvin*, No. 13 Civ. 4179(AJP), 2014 WL 1979927, at *17 n. 27 (S.D.N.Y. May 15, 2014); *see also Acevedo v. Colvin*, No. 12–cv–6536 EAW, 2014 WL 2069481, at *9 n. 7 (W.D.N.Y. May 19, 2014) (collecting cases). It follows that a "disabled" determination made by another agency is not binding on the Commissioner. 20 C.F.R. § 404.1504.

But, despite differing definitions and eligibility standards, disability determinations made by other government agencies (*e.g.*, Veterans Administration, state workers' compensation boards) are "entitled to some weight and should be considered." *See Lohnas v. Astrue*, 510 Fed. App'x 13, 14–15 (2d Cir. 2013) (summary order) (quoting *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975)). Such decisions and evidence used to make them may provide insight into an individual's mental and physical impairment(s), and will show the degree of disability determined by other agencies based on their rules. SSR 06–03p, TITLES II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS; CONSIDERING DECISIONS ON DISABILITY BY OTHER GOVERNMENTAL AND NONGOVERNMENTAL AGENCIES, 2006 WL 2329939, at *7 (SSA Aug. 9, 2006).

This dovetails with the general requirement, identified earlier, that evidence from all sources that is relevant to severity of impairments and how they affect individuals' ability to function can and should be considered.

## VIII. Dr. Kaufman's Evidence

In connection with separate workers' compensation proceedings, Stewart Kaufman, M.D., an orthopedic specialist, treated Bartko regularly from January, 2003, to well beyond his last insured date.[6] During multiple examinations, Dr. Kaufman made positive clinical findings of back-related pain, tenderness, limitation of flexion, bending, range of motion and abnormal gait.[7] On workers' compensation return-to-work forms, and also in clinical notes, Dr. Kaufman opined repeatedly (over 18 visits) that Bartko was "totally disabled," and unable to return to work. (T. 158, 160, 162-63, 165-74, 177).

---

[6] Bartko was receiving workers' compensation benefits at the time of the evidentiary hearing before ALJ Black-Pennington. (T. 36).

[7] Dr. Kaufman's records reflect the following:

- 1/03 - significant, episodic pain on the right sacroiliac down the right lateral thigh to his knee (T. 174);
- 2/03 - reported episodes of sharp pain in his right sacroiliac area whenever he moves. Physical therapy did not help with his pain. He can flex about 60 degrees and extend to about 5-10 degrees (T. 177);
- 4/03 - examination revealed flex about 60 degrees and extend to 0 degrees and bilateral bending about 10 degrees (T. 173);
- 6/03 - examination revealed Bartko could only bend to approximately his knees and manual motor testing is 4.5/5 on the right (T. 172);
- 7/03 - examination revealed restriction of back motion (T. 171);
- 1/05 - documents right L4 radiculopathy and anterior tarsal syndrom by electromyography (T. 170);
- 2/05 - examination revealed Bartko walks with a slight antalgic gait, slightly stooped forward, pain across the lower lumbar region, in particular the left side with radiation down into the left buttock, he is able to bend at the waist approximately 20 degrees, extension is neutral (T. 169);
- 6/05 - examination revealed some restriction of back motion and tenderness (T. 167);
- 1/06 - examination revealed flex at about 30 degrees and extension of 0 (T. 162);
- 3/06 - examination revealed tenderness across the lower lumbar region, paraspinal musculature; only able to bend at the waist approximately 20 degrees, extension 0 (T. 160);
- 4/06 - examination showed decreased range of motion of the back of 45 degrees flexion, 0 extension (T. 158)
- 8/06 - examination revealed pain to palpation of the lower lumbar region and manual motor testing is 4.5/5 on the left (T. 158);

## IX.  ALJ Black-Pennington's Approach

ALJ Black-Pennington's decision references Dr. Kaufman's treatment notes extensively when discussing Bartko's residual functional capacity. (T. 24-26).  ALJ Black-Pennington, however, found "no evidence" that Bartko suffered from any disorder as of his date last insured *that would have precluded him from engaging in sedentary work activity on a sustained basis*.  (T. 25).  ALJ Black-Pennington reasoned that, from his alleged onset of disability on September 25, 2001, through his date last insured of December 31, 2006:

> [I]maging studies revealed only mild and minimal degenerative changes. He had normal deep tendon reflexes and peripheral pulses in his lower extremities.  His lower spine was tender when palpated, and he had some restriction of motion; however, he was able to walk on his heels and toes without difficulty.  His gait was normal.  He did not have any problems using his upper extremities or his neck.

(T. 25–26).

ALJ Black-Pennington did not specify any weight – one way or another – afforded to Dr. Kaufman's total-disability opinion.  ALJ Black-Pennington afforded "great weight" to opinions of two consultative examiners, Dr. Anthony Zale, M.D.[8] and Dr. James W. Nelson, M.D.[9]  These consultative opinions, however, were credited only in connection with a sequential evaluation Step 4

---

[8] Dr. Zale's examination of Bartko on November 20, 2003, revealed low back tenderness, muscle spasm, decreased range of motion and positive straight leg raising on the right and left at 90 degrees.  (T. 249).

[9] Dr. Nelson's examination of Bartko on March 13, 2003, revealed flattening of the normal lumbar lordotic curve, tenderness to palpation over the paravertebral musculature in the lower lumbar region, particularly on the right of the midline, tenderness in the right buttock and over the right sacroiliac joint, and decreased range of motion bending forward, lateral and trunk rotation and inability to hyperextend at all. Dr. Nelson also found the Trendelenburg's test (a test used to assess hip stability) on the right side to be positive. (T. 251).

determination that Bartko could no longer perform his past relevant work.[10] ALJ Black-Pennington did not accept or rely on consultative opinion to the exclusion of Dr. Kaufman's opinion for other purposes such as her predicate residual functional capacity assessment.

Bartko neither disputes findings made by these consultative examiners nor does he complain of any error at Step 4. Consequently, ALJ Black-Pennington's weighting of consultative opinion has no particular significance in this action for judicial review.

## X. Discussion

Since ALJ Black-Pennington made no mention whatsoever of Dr. Kaufman's total-disability reports, she did not consciously afford controlling weight to those ultimate-issue opinions. Her decision, moreover, gives no indication that she utilized a six-factor analysis prescribed by regulation (*see* Section VI.*A.*, *supra*) to determine what degree of lesser weight to afford those opinions. In short, ALJ Black-Pennington's decision contains neither a six-factor weighting of such opinion under 20 C.F.R. § 404.1527(d)(2) nor a statement of good reasons explaining and justifying any lesser weight afforded Dr. Kaufman's treating source opinion. Indeed, by finding that Bartko retained capacity for a full range of sedentary work as of his last-insured date, ALJ Black-Pennington implicitly "rejected" Dr. Kaufman's ultimate-issue opinion in the social security context.

---

[10] ALJ Black-Pennington utilized a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

It is unreasonable, however, to assume that ALJ Black-Pennington also gave no consideration to Dr. Kaufman's opinion. "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *see also Brault v. Social Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("An ALJ does not have to state on the record every reason justifying a decision," nor is an administrative law judge "required to discuss every piece of evidence submitted."). Likewise, the court cannot conclude that ALJ Black-Pennington overlooked or disregarded Dr. Kaufman's clinical observations regarding the nature and severity of Bartko's impairments. ALJ Black-Pennington mentioned Dr. Kaufman by name, and much of the clinical evidence on which ALJ Black-Pennington based her residual functional capacity assessment came directly from Dr. Kaufman's treatment notes. (T. 24-25). Bartko points to no significant clinical finding in Dr. Kaufman's treatment records that ALJ Black-Pennington rejected or overlooked in her summary of the medical evidence that accompanied her residual functional capacity finding.

Bartko's challenge, therefore, boils down to a forthright contention that ALJ Black-Pennington erred by not applying the regulatory treating-physician rule and the "good reasons" rule to Dr. Kaufman's ultimate-issue, workers' compensation opinion of total disability. Bartko's point might be meritorious had Dr. Kaufman – clearly a treating source – offered opinions on Bartko's capacity to perform ordinary physical functions inherent to social security residual functional capacity assessments (*e.g.,* lift, carry, walk, etc). (*See* note 3, *supra*). In that event, ALJ Black-Pennington would have been bound to the treating-physician and good-reasons standards discussed earlier.

Bartko cites no authority, however, and independent research fails to disclose, any statute, regulation, ruling or judicial precedent stating that an *ultimate-issue* opinion from a treating medical source is entitled to presumptive controlling weight under the treating physician rule, or that when controlling weight is not afforded, that opinion must then be weighed according to the six regulatory factors listed earlier, and also accompanied by a statement of good reasons justifying the weight given. And, as ultimate-issue opinion is *never* presumptively afforded controlling weight, it is doubtful that such authority exists. Application of the six regulatory factors to an ultimate-issue opinion would be awkward at best.

The court need not decide that issue here, however. Assuming *arguendo* that the rule advocated by Bartko exists, ALJ Black-Pennington's "error" (in not affording controlling weight, applying the six-factor analysis or providing "good reasons" with respect to ultimate-issue opinion) would be harmless because she would have reached the same result absent the error. If ALJ Black-Pennington had fully credited Dr. Kaufman's opinion of "total disability," a reviewing court could not construe it to mean that Dr. Kaufman believed that Bartko was totally disabled from *any* form of gainful employment. Such a construction was foreclosed by Dr. Kaufman himself, who subsequently opined – 2 years later after Bartko's condition *worsened* – that Bartko retained capacity to perform sedentary work.

ALJ Black-Pennington, rather, would have been bound to consider and accept an ultimate-issue "total disability" opinion in its proper context. Social security adjudicators must consider ultimate-issue evidence developed in extrinsic workers' compensation proceedings as showing the degree of disability

determined by workers' compensation agencies *based on their rules.* SSR 06–03p, 2006 WL 2329939, at *7. In New York, "[w]orkers' compensation determinations are directed to the workers' *prior employment* and measure the ability to perform that employment . . . . *Lefever v. Astrue*, No. 07–CV–622, 2010 WL 3909487, at *13 (N.D.N.Y. Sept. 30, 2010) (emphasis added), *aff'd*, 443 Fed. App'x 608 (2d Cir. 2011) (summary order). Workers' compensation determinations do not measure workers' capacities to perform *any* type of gainful employment. Thus, fully crediting Dr. Kaufman's "total disability" opinion would have led ALJ Black-Pennington only to find that Bartko could no longer perform his past relevant work, not whether he was disabled from all forms of work.

ALJ Black-Pennington made this very finding at Step 4 of sequential evaluation. The Step 4 finding was favorable to Bartko, and was exactly what Bartko proposed it should be. Indeed, when viewed through the SSR 06-03p lens, it effectively afforded "controlling weight" to Dr. Kaufman's opinions. It also had the legal effect of establishing a *prima facie* case of disability. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984).

ALJ Black-Pennington denied Bartko's application at subsequent Step 5 (where adjudicators determine whether claimants can perform alternative work). Fully crediting Dr. Kaufman's opinion would not have helped Bartko at Step 5 unless, as Bartko advocates, that opinion was meant to be a declaration that Bartko could not perform *any* form of work. Such a construction is untenable, however. Dr. Kaufman himself scuttled that interpretation through his later statement in 2008, given after Bartko's condition had worsened substantially from what it was in 2006 when Bartko was last insured, that Bartko, even then, could still perform sedentary work. (T. 222-24, 257).

A reviewing court can conclude confidently that the Commissioner's decision would have been the same had the supposed "error" not occurred. Accordingly, ALJ Black-Pennington committed no harmful or reversible error in connection with her handling of an ultimate-issue opinion from a treating medical source.

## XI.  Recommendation

The Commissioner's decision denying disability benefits should be **AFFIRMED**.

## XII.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the   4   day of   September   2014.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge